IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN H. CLOUGH, *pro se*,

Plaintiff,

vs. CIVIL NO. 11-16 LFG/WDS

TERRY SLATTERY, individually, and in his official capacity as the Executive Director of the Public Employees Retirement Association; and the PUBLIC EMPLOYEES RETIREMENT ASSOCIATION,

Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING PLAINTIFF'S COMPLAINT WITH PREJUDICE**

THIS MATTER is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. 5], Plaintiff's Response in opposition [Doc. 6], and Defendants' Reply [Doc. 11]. Oral argument is not necessary.

**Background**

John H. Clough ("Clough") was a public employee with the State of New Mexico and a participant in a public retirement plan administered by the Public Employees Retirement Board, a state agency acting as the trustee for the various retirement funds handled by the Public Employees Retirement Association of New Mexico ("PERA"). *See* NMSA 1978 § 10-11-1 (2003), *et seq.*; Gill v. Public Employees Ret. Bd. of Public Employees Ret. Ass'n of New Mexico, 135 N.M. 472, 475, 90 P.3d 491, *cert. denied*, 543 U.S. 926 (2004). His *pro se* complaint for declaratory judgment,

equitable relief, and monetary damages challenges, *inter alia*, the constitutionality of a recent amendment to the Public Employees Retirement Act. [Doc. 1, attached Complaint; Doc. 6, p. 2.]

Clough was employed with the State of New Mexico between 1994 and 2003. Generally, under provisions of the Public Employee Retirement Act, an individual with the State of New Mexico or an affiliated public employer, earns service credits for the "personal service rendered an affiliated public employer." NMSA 1978 § 10-11-4. The employee and the employer both make contributions to the employee's retirement fund. The contributions are based on a percentage of the employee's salary. *See, e.g.*, NMSA § 10-11-26, *et seq.*; Gonzales v. Public Employees Ret. Bd., 114 N.M. 420, 422, 839 P.2d 630 (Ct. App.) ("PERA membership contributions were deducted from the salary of each plaintiff, and corresponding employer contributions were made by the state on behalf of each plaintiff"), *cert. denied*, 114 N.M. 227 (1992).

In about 2003, Clough separated from his employment with the State of New Mexico and relocated to the State of Colorado. In 2004, when he subsequently reached the retirement age of 64, and earned sufficient service credits, Clough applied for retirement benefits.[1] In 2006, Clough returned to the State of New Mexico and sought re-employment with the State. He was hired by the Public Regulatory Commission ("PRC") and worked there approximately thirteen months, between October 2006 and November 2007. As a previously retired member of PERA, Clough did not accrue service credits during the PRC employment period. *See* NMSA 1978 § 10-11-8(C)(3) (retired member who returns to employment during retirement receives retirement benefits but is not entitled to acquire service credit).

---

[1]NMRA § 10-11-2(R) defines "retire" to mean: "(1) terminate employment with all employers covered by any state system or the educational retirement system; and (2) receive a pension from a state system or the educational retirement system."

Pursuant to then-existing laws relating to a retiree returning to work, Clough was eligible to receive both his pension and salary. In November 2007, Clough again left State employment with the PRC, but in January 2009, returned to public service with an affiliated employer, the Town of Taos, where he was hired as an assistant town attorney. He continues to work in Taos in the same capacity.

In the interval between his employment with the PRC and the Taos position, when then-existing State law authorized a retiree to return to public employment and draw both a pension and salary, the legal and social landscape changed. The PERA Fund suffered record losses due to a poor economy.[2] Additionally, the public sentiment against the practice of "double-dipping" prompted significant legislative changes.[3] In 2010, the New Mexico legislature enacted amendments to control double dipping and drastically restricted the practice of retirees returning to work and receiving both a pension and a salary.

The PERA amendment to NMSA 1978 § 10-11-8(G), which Clough challenges, became effective July 1, 2010. As of that date, an individual employed by an affiliated public employer could retain his pension, but the employee had to pay his share of the contributions to the PERA

---

[2]On October 27, 2007, PERA Board Chairman Victor A Montoya reported fund losses of about $300,000,000 since June 30, 2007, due to declines in stock and bond prices. http://www.santafenewmexican.com/Opinion/Commentary_New_Mexico_PERA_col_for_10_27

[3]"Double dipping, the practice that allows retired employees to return to work and simultaneously collect both a paycheck and a pension, had come under fire in recent years for stifling internal promotions and putting a strain on the state's retirement fund." http://www.abqjournal.com/news/state/162351419496 newsstate07-16-10.htm. The practice is also severely criticized by present and potential state employees who believe that upward promotional ability is thwarted when retired employees fill positions that would otherwise be available for subordinate employees or new hires.
*See* www.pera.state.nm.us/pdf/Legislation/Legislation0310.pdf

Fund. Prior to the amendments, and subsequent to the date of his retirement, PERA contributions had been paid by his employer. New provisions now allow Clough to continue to draw his retirement at the same time he draws his salary, but those contributions towards the fund must be paid by Clough, and he does not earn service credits for any higher retirement.

**Clough's Claims**

Clough contends the 2010 legislative enactments are unconstitutional and illegal. In Count I of his lawsuit, he seeks a declaratory judgment that the legislative amendments violate provisions of federal and state law, asserting that they are discriminatory based on age, as well as violative under the Human Rights Act. He contends that these amendments constitute an illegal "bill of attainder" and impair obligations of existing contract, constitute violations of his liberty and property interests, as well as rights to equal protection under the law.

In Count II, Clough seeks equitable relief to enjoin the enforcement of the amendments. In Count III, he asserts common-law, equitable claims for *quantum meruit* and unjust enrichment; and, in Count IV, he requests monetary damages under 42 U.S.C. § 1983 for alleged violations of the United States and New Mexico Constitutions and statutory law.

**Motion to Dismiss**

Defendants seek dismissal of Clough's case with prejudice, as a matter of law. [Doc. 5.] Defendants argue that the Complaint fails to state an actionable cause under Fed. R. Civ. P. 12(b)(6); that the claim for money damages against a State agency or individual in an official capacity is impermissible; that the claims for unjust enrichment and *quantum meruit* against the State are barred by the State's immunity; that the remaining claims alleging violations of the federal and state constitutions and statutes fail because Clough has no vested property interest in prospective wages and compensation from his employment with a governmental entity; and generally that the

Complaint fails to meet the pleading standards under Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 , 1970 (2007), and Ashcroft v. Iqbal, __ U.S. __ 129 S. Ct. 1937 (2009).

**Analysis**

**I. Count I – "Declaratory Relief" [Doc. 1, Complaint, p. 10.]**

Clough seeks a declaration that NMSA 1978 § 10-11-8(C) "both on its face and as applied in Plaintiff's situation violates Plaintiff's rights as guaranteed by various provisions of the United States Constitution and the New Mexico Constitution. . . ." and statutory law. [Doc. 1, Complaint, p. 10.] A discussion of the constitutional and statutory provisions or rights that Clough contends were violated follows.

A. Age Discrimination

Clough alleges that the amendments to the PERA discriminate against him on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA") and the New Mexico Human Rights Act ("NMHRA"). [Doc. 1, Complaint, p. 11.] Under either statute, Clough is required to exhaust administrative remedies before filing suit for alleged age discrimination. *See* Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005) ("a plaintiff's exhaustion of ... administrative remedies is a jurisdictional prerequisite to suit under the ADEA" in the Tenth Circuit); Saavedra v. Lowe's Home Centers, Inc., __ F. Supp. 2d ___, 2010 WL 3656008, at *11 (D.N.M. Sep. 2, 2010) ("The Supreme Court of New Mexico and the New Mexico Court of Appeals have consistently held that 'full compliance with NMHRA grievance procedures [is] a prerequisite to filing [an NMHRA] claim in district court.'")

Here, Clough neither alleges nor demonstrates that he exhausted administrative remedies with respect to his age discrimination claims. He did not file administrative complaints with the appropriate agency tasked to investigate and conciliate claims, and he did not receive a "right to sue"

letter authorizing him to bring a civil lawsuit. Indeed, he intimates no exhaustion is required because he does not bring any age discrimination claim against his employer. [Doc. 6, p. 21.] The Court rejects Clough's position. Failure to exhaust administrative remedies acts as a jurisdictional barrier to Clough's allegations that New Mexico's legislative enactments discriminate against him due to his age. Thus, the age discrimination claims are dismissed, without prejudice.

B. Bill of Attainder

Clough asserts that NMSA 1978 § 10-11-8(C) and a portion of (G) (as amended in 2010), which purportedly result in a "suspension of [] pensions" and "a taking of [] PERA contribution without consideration or compensation," amount to a "bill of attainder prohibited by the United States Constitution and the New Mexico Constitution. [Doc. 1, Complaint, p. 11.]

In Taylor v. Sebelius, 189 F. App'x 752, 758 (10th Cir. Jul. 21, 2006) (unpublished), the Tenth Circuit provided the following discussion concerning a bill of attainder.

> A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Selective Serv. Sys. v. Minn. Pub. Interest Research Group, 468 U.S. 841, 846-47, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984) (quotations omitted); *see* Bledsoe v. United States, 384 F.3d 1232, 1238 (10th Cir.), *cert. denied*, 544 U.S. 962, 125 S.Ct. 1745, 161 L.Ed.2d 605 (2005). To determine whether a statute comes within this definition, there are three necessary inquiries: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish." Selective Serv. Sys., 468 U.S. at 852, 104 S.Ct. 3348 (quotations omitted).

In Selective Serv. Sys., the United States Supreme Court discussed bills of attainder at length in terms of their historical context and meaning.

> In forbidding bills of attainder, the draftsmen of the Constitution sought to prohibit the ancient practice of the Parliament in England of punishing without trial "specifically designated persons or groups." United States v. Brown, 381 U.S. 437, 447, 85 S.Ct. 1707, 1714, 14 L.Ed.2d 484 (1965). Historically, bills of attainder generally named the persons to be punished. However, "[t]he singling out of an individual for legislatively prescribed punishment constitutes an attainder whether the individual is called by name or described in terms of conduct which, because it is past conduct, operates only as a designation of particular persons." Communist Party of the United States v. Subversive Activities Control Board, 367 U.S. 1, 86, 81 S.Ct. 1357, 1405, 6 L.Ed.2d 625 (1961).

Selective Serv. Sys., 468 U.S. at 848. In terms of whether a particular piece of legislation evinces a congressional intent to punish, the Supreme Court observed that "[a]t common law, bills of attainder often imposed the death penalty; lesser punishments were imposed by bills of pains and penalties." Id. at 852. "[B]ills of pains and penalties commonly imposed imprisonment, banishment, and the punitive confiscation of property." Id. (citation omitted).

"In our own country, the list of punishments forbidden by the Bill of Attainder Clause has expanded to include legislative bars to participation by individuals or groups in specific employments or professions." Id. As examples of such scenarios, the Court listed cases involving Communist Party members who were barred from offices in labor unions, three named government employees whose salaries were cut off, a priest who was prevented from acting a clergyman, and an attorney prohibited from practicing law. Id., n. 9.

The Court determines that the amendment in question does not amount to a bill of attainder. It does not fall within the historical meaning of legislative punishment, it cannot reasonably be said to further punitive legislative purposes, and it does not evince a congressional intent to punish. It merely signaled and effected a change in the social and legal landscape where the legislature sought

to restrict or otherwise regulate double dipping by PERA retirees and control spending.[1] While it requires a plaintiff such as Clough to make a contribution to the PERA Fund, it does not cut off his salary or prevent him from receiving a pension. It merely requires him to begin contributing to the PERA Fund if he returns to work for a New Mexico affiliated public employer after retiring and receiving his PERA pension. While the amendments may greatly displease Clough and other public employee retirees who have chosen to return to public employment, the legislation does not amount to a bill of attainder. It does not inflict anything close to "approaching the 'infamous punishment' of imprisonment" or other disabilities historically associated with punishment." Id. at 853.

Clough devotes about 15 pages of his response to the Motion to Dismiss to a historical review of Bills of Attainder, case law discussing such Bills, and New Mexico's double dipping legislation. [Doc. 6, pp. 6-21.] The Court finds his arguments unpersuasive and not helpful to the determination of whether the 2010 amendments amount to a Bill of Attainder. The Court rejects Clough's argument and concludes that Clough's Bill of Attainder allegations fail to state a claim. Thus, the Bill of Attainder claim must be dismissed, with prejudice.[2]

C. Contractual Obligations

Clough argues that if the amendments are found to be unconstitutional, the legislation impaired Clough's employment contract with the Town of Taos by causing him to suffer

---

[1]Part of the rationale for the legislatures's amendments was that New Mexico no longer could afford double dipping in hard economic times. "Because current double dippers don't contribute into the state's retirement funds, the state is forced to pay a double share into the retirement funds – the employee's and employer's – for these particular workers. Those payments come out of the state's general fund, the state's main account, which has a projected budget shortfall of several hundred million dollars next year." http://newmexicoindependent.com/48158/legislature-votes-to
-end-future-double-dipping (Article published in the New Mexico Independent, 2/18/10).

[2]Because it is conceivable that Clough could have a written contract with the Town of Taos, that was not correctly pled, the claim is dismissed, without prejudice.

"continuing loss of property that will increase over time until he leaves his position" with the Town of Taos. [Doc. 1, Complaint, p. 11.] In his response to the Motion to Dismiss, Clough contends that his "property interest in his pension has vested, matured and has been exercised by his retirement" and that it cannot be diminished. [Doc. 6, p. 6.] Therefore, according to Clough, he has a *de jure* ("by law") pension contract with the State of New Mexico. [Id.]

Although it is unclear, Clough's purported contract claim sounds like an implied contract claim brought against a state entity, *i.e.*, PERA. Generally speaking, governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract. NMSA 1978 § 37-1-23(A). In Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 734 (1996), the New Mexico Supreme Court determined that a comprehensive written personnel policy amounted to a "valid written contract," sufficient to waive governmental immunity as to an implied contract claim brought against that entity.

Here, Clough did not plead any allegations that he had some type of "valid written contract" with the Town of Taos or the State of New Mexico that was breached by that entity. Thus, there are no allegations that demonstrate the governmental entity's immunity was waived as to an implied contract claim.

It simply is not clear what kind of contractual claim Clough seeks to bring or against whom he even brings such a claim. The Court determines for the reasons set out above that Clough's allegations of a "*de jure* pension contract" fail to state a claim. Clough fails to plead "enough facts to state a claim to relief that is plausible on its face." *See* Twombly, 127 S.Ct. at 1955. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965. Clough has failed to "nudge this claim across the line from conceivable to plausible" in order to survive the motion to dismiss. Therefore, the contractual claim is dismissed, without prejudice.

D. Equal Protection

A significant portion of Clough's complaint sets out claims identified as equal protection challenges. [Doc. 1, Complaint, pp. 12-15.] He asserts for example, that his liberty and property interests were violated under the Equal Protection Clause, including his right to contract for or seek part-time or full-time work with any affiliated public employer in New Mexico. The Equal Protection claims include allegations, *inter alia*, that his fundamental right to both interstate and intrastate travel was violated, his right to be free from a bill of attainder was violated, his "inherent rights" were violated, and his property rights to PERA contributions were violated. Clough also provides argument that there is an absence of a compelling state interest to justify the amendment, that the amendment affects a suspect class of persons based on age, and that it is not supported by any rational basis analysis.

Clough's rambling and overlapping arguments and claims are difficult to corral. However, to the extent that he claims the PERA amendments constitute a taking without just compensation, this Court previously rejected that argument, and this Court adopts the rationale set out in Archunde v. Public Employees Retiree Association, CIV 07-484 BB/RLP [Doc. 64] (D.N.M. Sep. 9, 2008) (unpublished) (involving a substantially similar requirement that police officers drawing both salaries and PERA benefits make contributions to the Fund; and holding that requiring payment to PERA Fund was not an unconstitutional taking without just compensation).

With respect to alleged violations of his liberty and property interests, Clough must establish that he has a vested right in his compensation from his government employment. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 567 (1972) (the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property). There is no showing that Clough has a vested constitutional right to terms

and conditions of employment as an employee of Taos County. Whitley v. N.M. State Personnel Bd., 115 N.M. 308, 312 (1995) (discussing that it is well established that statutes fixing the compensation or terms of public employment are presumed merely to establish public policy subject to legislative revision, and not to create contractual or vested rights).

Clough's allegations do not demonstrate that the amendments violated his right to either seek or accept full or part-time work with another affiliated public employer. He is free to accept or reject employment under the terms and conditions available to him. His allegations fail to show how "his right to live and work where he will and to earn his livelihood by any lawful calling" were affected by the legislation. His claims are conclusory in nature and simply fail to withstand pleading standards and requirements set out in Twombly and Iqbal.

Clough also challenges the constitutionality of the PERA amendments generally. He claims the amendments are not supported by a "compelling state interest as required by the equal protection analysis." However, a statute is presumed to be constitutional, and the burden in Clough to "negative every conceivable basis which might support it." Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364, *reh'g denied,* 411 U.S. 910 (1973). While Clough may disagree with the Legislature's choice of enacting amendments, and may even argue that the information on which the Legislature relied was flawed, such argument does not satisfy his burden. The law provides:

> Governmental bodies have "wide latitude in enacting social and economic legislation; the federal courts do not sit as arbiters of the wisdom or utility of these laws." . . . [W]e need not satisfy ourselves that the challenged rules will in fact further their articulated purposes; it is sufficient if the "Legislature could rationally have concluded that the purpose would be achieved."

Allright Color., Inc. v. City & County of Denver, 937 F.2d 1502, 1512 (10th Cir.) (citations omitted), *cert. denied,* 502 U.S. 983 (1991).

Suffice to say that the New Mexico Legislature reacted due to significant economic pressures. Significant financial losses to the State's PERA Fund, together with growing public sentiment against the practice of double dipping, and the need to impose restrictions on terms and conditions of re-employment, likely prompted the Legislature to modify the retirement act in the method it did.

Clough's remaining and varied equal protection claims are analyzed under the rational basis test. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. Amend. XIV, § 1, and the Due Process Clause of the Fifth Amendment "incorporates the principles of equal protection and thus protects against discriminatory legislative classifications by the federal government." United States v. Phelps, 17 F.3d 1334, 1343 n. 12 (10th Cir.), *cert. denied*, 513 U.S. 844 (1994). When considering an Equal Protection claim, the Court applies a rational basis test if "the challenged government action does not implicate either a fundamental right or a protected class." Price-Cornelison v. Brooks, 524 F.3d 1103, 1110 (10th Cir. 2008).

In this case, because there is no suspect classification, the equal protection challenges are reviewed only under a rationale basis test. Patton v. TIC United Corp., 77 F.3d 1235, 1247 (10th Cir.), *cert. denied* 518 U.S. 1005 (1996). For example, even if legislative changes relating to retirement affect those at or near the age of retirement, "age is not a suspect classification under the Equal Protection Clause. . . . [s]tates may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest." Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83, *cert dism'd*, 528 U.S. 1184 (2000).

To the extent the Legislature acted to shore up financial losses to the public retirement fund, and to respond to public criticism about double dipping and the loss of employment opportunities

for current or prospective State employees who had not retired, the Legislature was free to modify the act as it did.

In City of Herriman v. Bell, 590 F.3d 1176, 1194 (10th Cir. 2010), the Tenth Circuit explained:

> A rational basis equal protection analysis is highly deferential to state legislatures, and we accord a strong presumption of validity to laws that neither involve fundamental rights nor proceed along suspect lines. *See* Heller v. Doe, 509 U.S. 312, 319-21, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Rational basis review is not a license for us "to judge the wisdom, fairness, or logic of legislative choices." FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). Instead, we uphold a statute if there is any "reasonably conceivable state of facts" that could provide for its basis, id., and will only strike the law down if the state's classification "rests on grounds wholly irrelevant to the achievement of the State's objective," Holt, 439 U.S. at 71, 99 S.Ct. 383 (quotation omitted) (emphasis added).

In other words, the Court is not permitted to second guess the wisdom of legislative action. *See also* Seegmiller v. LaVerkin City, 528 F.3d 762, 772 (10th Cir. 2008) (a rational basis review must be highly differential to the government's action).

For Clough to move forward with these claims, it was incumbent on him to show that the governmental act complained of, *i.e.*, amendments to the Public Employees Retirement Act, did not further a legitimate State purpose by rational means. Id., (*citing* Powers v. Harris, 379 F.3d 1208, 1215 (10th Cir. 2004)). His differences and disagreements with the legislation do not satisfy his heavy burden of showing no rational basis for the amendments. The State Legislature had many reasons for enacting the amendments, including reducing monetary losses to the Fund, increasing job opportunities, and preventing continued double dipping.

The Court determines that the amendments at issue withstand rational basis review, and therefore, that Clough's equal protection challenges and claims must be dismissed, with prejudice. All other equal protection claims are dismissed for failure to state a claim as discussed *supra*.

In addition, the Court observes that based on all of the above-discussed claims, Clough seeks a declaratory judgment in his favor declaring the amendments in question as null, void, violative of his rights, and unconstitutional. [Doc. 1, Complaint, p. 15.] The Court denies Clough's related request for a declaratory judgment, and the claim for declaratory relief is dismissed, with prejudice.

## II. Counts II and III – "Equitable Relief" [Doc. 1, Complaint, pp. 15, 16.]

In Count II of the Complaint, Clough seeks equitable relief "as may be necessary and appropriate to enforce any declaratory judgment that may be granted pursuant to Count One of this Complaint. . . ." [Doc. 1, Complaint, p. 15.] Because the Court already discussed why it denied any request for declaratory relief above, the request for equitable relief is denied, and Count II is dismissed, with prejudice.

In Count III, Clough seeks equitable relief "as may be necessary and appropriate to enforce any common law claim for unjust enrichment as may be required . . . ." [Doc. 1, Complaint, p. 16.] In furtherance of this claim, Clough alleges that when he was employed by the PRC and the Town of Taos, "his contribution to PERA was paid by his employer, and he, therefore, acquired *quantum meruit*[3] rights either directly or as a third party beneficiary to have his pension adjusted by adding his service credits to his existing pension at the rates in effect at the time of his retirement." [Id.] He alleges that PERA's fund was unjustly enriched by his contributions or contributions made on

[3]Quantum meruit is defined as a "claim or right of action for the reasonable value of services rendered" and as "equitable remedy to provide restitution for unjust enrichment." Black's Law Dictionary 1255 (7th ed.1999).

his behalf. Clough requests judgment granting equitable relief "to compel the Defendant to adjust his service credits by the addition of his time spent working for the PRC and the Town of Taos whether this time is in the past or in the future . . . ." [Doc. 1, Complaint, p. 17.]

New Mexico law grants governmental entities immunity from actions based on contract, except for actions based on a valid written contract. NMSA 1978 § 37-1-23; *see* Hydro Conduit Corp. v. Kemble, 110 N.M. 173, 179 (1990) (holding claims against governmental defendants for unjust enrichment were barred by contractual immunity under § 37-1-23). In Hydro Conduit, the Supreme Court determined that a claim for unjust enrichment is an action closely related to one based on contract for purposes of § 37-1-23 and that § 37-1-23 should be construed to extend governmental immunity to unjust enrichment claims. See id. Furthermore, the Court observed that actions for unjust enrichment, quasi contract, contract implied in law, and *quantum meruit* were essentially the same. Id. The Court reasoned that the purpose of the statute was to reinstate sovereign immunity for that type of claim. Id. *See also* Village of Angel Fire v. Board of County Com'rs of Colfax County, 148 N.M. 804, 242 P.3d 371, 377-78 (Ct. App. 2010) ("by operation of the sovereign immunity statute, the [plaintiff's] claim in *quantum meruit* is barred. Under Section 37-1-23, claims for contract and *quantum meruit* must stand and fall together.")

The Court concludes that the claims for equitable relief in Count III are barred by governmental immunity and also fail to state a claim. Therefore, the Count III claims are dismissed with prejudice.

**III. Count IV–"Money Damages" [Doc. 1, Complaint, p. 17.]**

A. Official Capacity Claims and Claims Against State

"The Eleventh Amendment and the concept of sovereign immunity it embodies, bars suits against states absent an express and unambiguous waiver or abrogation by Congress." Wood v.

Milyard, 2011 WL 103029, *1 (10th Cir. Jan. 13, 2011) (unpublished) (*citing* Edelman v. Jordan, 415 U.S. 651, 662-63 (1974)). Eleventh Amendment sovereign immunity bars claims against state defendants such as those named unless the state has waived that immunity. Edelman, 415 U.S. at 662-63, *overruled on other grounds by*, Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989).

A rule has evolved that when private parties file lawsuits seeking to impose liability which must be paid from public funds in the state treasury, such suit is barred by the Eleventh Amendment. Edelman, 415 U.S. at 663 (citation omitted). In other words, lawsuits brought against individuals in an official capacity are suits against the state and are barred by the Eleventh Amendment. Will, 491 U.S. at 66. In Will, the Supreme Court explained:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the state has waived its immunity.

In the present case, Clough asserts claims against Terry Slattery ("Slattery") "individually, in his official capacity as Executive Director of the Public Employees Retirement Association." In essence, these are claims against a state executive in an official capacity, and therefore, claims against the state. Will, 491 U.S. at 66. He also brings an action against the PERA itself. Even though Clough does not expressly name the State of New Mexico as a defendant, he clearly notes that a portion of his claim is against State entities or State officials, in an official capacity. "It is well established that even though a state is not named as a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." Edelman, 415 U.S. at 663. *See also* Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945) ("When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."),

*overruled on other grounds by*, Lapides v. Bd, of Regents of Univ. Sys. of Georgia, 535 U.S. 613 (2002).

Clough does not argue that the State of New Mexico has waived immunity to suit, and there is no indication that Defendants have consented to be sued. Because Clough brings a claim for monetary damages against the State official and State entity, all official capacity claims are barred by the State's Eleventh Amendment immunity. Moreover, any claim brought pursuant to 42 U.S.C. § 1983 must be brought against a "person" acting under color of state law. Will, 491 U.S. at 71. While state officials are, indeed, "persons," a "suit against a state official in his or her official capacity is not a suit against the official but rather against the official's office. As such, it is no different from a suit against the state itself." Id. (citations omitted). The state is simply not a "person" for purposes of § 1983 liability.

Thus, to the extent that Clough seeks monetary damages against the State or against a state executive in an official capacity, his claim cannot withstand the motion to dismiss. Accordingly, Count IV of his complaint is dismissed, with prejudice.[4]

B. Individual claims against Terry Slattery.

It is not clear that Clough seeks any relief from Defendant Slattery, as sued in his individual capacity. The caption of Clough's lawsuit indicates that he sues Slattery "individually," but he fails to identify any act or involvement by Slattery in the alleged deprivation of rights. It appears that Slattery is sued simply because he is in the chain of command.

---

[4]Clough attempts to save certain claims from dismissal by arguing that "[t]his case primarily involves constitutional claims sought through the Declaratory Judgment Act to declare the newly enacted anti double dipping law unconstitutional" and that Counts III and IV are "subsumed by Count Two as extensions of what may be appropriate relief depending upon the Court's findings in Count One. Counts Three and Four are not intended to be independent causes of action . . . ." [Doc. 6, p. 2.] The Court is not persuaded. The Complaint clearly sets forth four separate causes of action. [Doc. 1, Complaint.]

The United States Supreme Court's decisions in Twombly and Iqbal significantly changed civil pleading requirements. It is no longer sufficient to plead conclusions, and the Court is no longer required to accept as true the allegations of a complaint. While the current pleading requirements in a post-Twombly/Iqbal world do not require "detailed factual allegations," Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Id. (citations omitted).

Clause allegations, to the extent he seeks relief against Defendant Slattery, fail to meet pleading requirements of both Rule 8 and the standards set forth in Twombly and Iqbal. Indeed, "a plaintiff's obligation to provide the 'grounds of his entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative label." Id. (citations omitted).

In this case, it is unknown what Clough believes Slattery did or failed to do that purportedly violated Clough's rights. Thus, the allegations in this case are not even close to the allegations made in Iqbal where the unsuccessful litigant sought to argue that the Attorney General and the Director of the FBI were responsible for policies and procedures under which Iqbal alleged his rights were

violated. Rather, it appears Slattery is named simply because he is the Director, and, therefore, comes within the chain-of-command. Iqbal instructs that simply being a supervisor is insufficient to allow for constitutional liability. A party is liable only for his or her own acts and violations of constitutional rights. Iqbal, 129 S. Ct. at 1948-49. Iqbal sounded the death knell for supervisory liability claims unless the supervisor actually participated in the alleged constitutional violations. Iqbal, Id. at 1957 (Souter, J., dissenting).

With respect to any allegations against Defendant Slattery, the Court concludes that Clough's Complaint fails to meet the minimum pleading requirements set forth in Twombly and Iqbal. Clough did not plead sufficient facts to demonstrate what Slattery did or failed to do in terms of any alleged constitutional violations. Moreover, to the extent that the claims against the Executive Director are supervisory liability claims, they are not actionable under Monell and Iqbal. Accordingly, any claims against Defendant Slattery, as sued in his individual capacity, fail to state a claim and are dismissed, with prejudice.

## Conclusion

The Court concludes that none of Clough's claims withstand Defendants' Motion to Dismiss.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint is GRANTED and Clough's lawsuit and complaint are DISMISSED, in their entirety. All claims are dismissed with prejudice, except for the contract claim that is dismissed, without prejudice.

Lorenzo F. Garcia
United States Magistrate Judge